206 N.J. Super. 532 (1985)
503 A.2d 336
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES E. FRACTION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 20, 1985.
Decided December 16, 1985.
*533 Before Judges BRODY, GAYNOR and BAIME.
Raymond R. Beam, Jr., argued the cause for appellant (Thomas S. Smith, Acting Public Defender, attorney; Raymond R. Beam, Jr., of counsel and on the brief).
Jeanne M. Andersen, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General, attorney; Jeanne M. Andersen, of counsel and on the letter-brief).
The opinion of the Court was delivered by BAIME, J.A.D.
Following a jury trial, defendant was found guilty of two counts of aggravated sexual assault in violation of N.J.S.A. *534 2C:14-2a(4). The convictions emanated out of a single criminal episode in which defendant forcibly committed acts of vaginal intercourse and cunnilingus while threatening the victim with a knife. The trial judge imposed concurrent custodial terms of 20 years. Pursuant to N.J.S.A. 2C:43-6b, the judge directed that defendant serve eight and one-half years without parole eligibility. As part of the sentence, defendant was ordered to pay the sum of $231.82 as restitution for various expenses incurred by the victim. In addition, the judge assessed penalties totaling $50 payable to the Violent Crimes Compensation Board. This appeal followed.
Defendant seeks a reversal on a variety of grounds. He first contends that the crime of aggravated sexual assault by an act of cunnilingus requires proof of vaginal penetration. Defendant asserts that the judge's refusal to so instruct the jury constitutes reversible error. He also claims that the aggravated sexual assault convictions should merge because the offenses constituted episodic fragments of a single criminal transaction. Defendant's final argument concerns the trial judge's refusal to admit evidence of the results of a polygraph examination. In essence, defendant asks us to reexamine the principles established in State v. McDavitt, 62 N.J. 36, 46 (1972) which preclude admission of such evidence in the absence of a clearly expressed stipulation between the parties. Our thorough review of the record convinces us that defendant's contentions are wholly devoid of merit. We affirm.
We need not recount the facts at length. The jury could reasonably have found from the evidence that the victim was accosted while leaving her place of employment. According to her testimony, she was threatened with a knife and dragged into nearby woods where she was sexually attacked. Defendant forced her to undress and then attempted to have intercourse. His initial attempt failed, however, because he did not have an erection and was unable to penetrate the victim's *535 vagina. Defendant then engaged in cunnilingus with the victim. She testified that he "licked [her] outer labia" but did not insert his tongue into her vagina. Following this, defendant penetrated the victim's vagina with his penis but withdrew when she told him that she had recently undergone some undisclosed "female operation."
Defendant was arrested shortly after the incident. He admitted that he had threatened the victim with a knife. However, he claimed that his intent was only to rob her of her automobile. According to his testimony, he forced the victim to undress in order to facilitate his escape. He then decided to engage in sexual intercourse, but changed his mind when the victim mentioned that she recently had an operation. Defendant denied engaging in oral sex or vaginal intercourse, but conceded that at some point he had intended to do both.

I
Initially, we reject defendant's argument that the trial judge erred in his instruction to the jury. N.J.S.A. 2C:14-2a(4) provides that one "is guilty of aggravated sexual assault if he commits an act of sexual penetration" and threatens the victim with a weapon. N.J.S.A. 2C:14-1c defines "sexual penetration" in the following terms:
"Sexual penetration" means vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the anus or vagina either by the actor or upon the actor's instruction. The depth of insertion shall not be relevant as to the question of commission of the crime.
By its very terms, therefore, the phrase "sexual penetration" includes the act of cunnilingus. Although the word "cunnilingus" is not defined in the Code of Criminal Justice, we are in accord with the trial judge's determination that it must be given its ordinary and well understood meaning. Service Armament Co. v. Hyland, 70 N.J. 550, 556 (1976). It is generally defined as "oral stimulation of the vulva or clitoris." Webster's Ninth New Collegiate Dictionary 315 (1985). See also Dorland's Medical Dictionary (Shorter ed. 1980); Schmidt, Attorneys' Dictionary of Medicine (3d ed. 1984). Thus, by definition *536 cunnilingus constitutes a form of "sexual penetration" under the statute notwithstanding the fact that the actor's tongue is not inserted into the vagina.
Contrary to defendant's assertion, the last sentence of the statutory definition does not compel a different result. What was meant to be conveyed was that the depth of insertion is irrelevant with respect to those sexual acts which require actual penetration. This sentence was merely intended to serve as a legislative expression of the pre-Code rule that penetration, however slight, is sufficient in cases involving vaginal and anal intercourse. See, e.g., State v. Riley, 49 N.J. Super. 570, 584 (App.Div. 1958), aff'd in part 28 N.J. 188 (1958) app. dism. and cert. den. 359 U.S. 313, 79 S.Ct. 891, 3 L.Ed.2d 832 (1959); Application of Faas, 42 N.J. Super. 31, 35 (App.Div. 1956); State v. Orlando, 119 N.J.L. 175, 183 (Sup.Ct. 1937). We, thus, hold that cunnilingus constitutes a form of "sexual penetration" within the purview of the statutory definition set forth in N.J.S.A. 2C:14-1c and that insertion of the tongue into the victim's vagina need not be proved. The trial judge's instructions fully comported with the statute and did not constitute reversible error.

II
We next turn to defendant's argument that the two offenses merge because they constituted parts of a single criminal episode. We disagree. Although the crimes were reasonably proximate in time and place, we perceive no justifiable basis to reward defendant on that account by vacating one of the two convictions. In our view, the victim suffered separate and distinct insults to her dignity and defendant may be punished separately for each of the offenses committed.
The doctrine of merger has been the source of much recent litigation. See, e.g., State v. Truglia, 97 N.J. 513, 518-522 (1984); State v. Dively, 92 N.J. 573, 579-582 (1983); State v. Mirault, 92 N.J. 492, 501-503 (1983); State v. Best, 70 N.J. 56, 60-63 (1976); State v. Davis, 68 N.J. 69, 77 (1975). Although *537 there is substantial disagreement with respect to its etiology, see State v. Best, supra 70 N.J. at 61 and State v. Davis, supra 68 N.J. at 77, the doctrine is unquestionably rooted in the fundamental prohibition against double punishment for the same offense. State v. Roller, 29 N.J. 339, 344 (1959).
With whatever "disarming ease" this thesis may be articulated, "its application is not without difficulties." State v. Davis, supra 68 N.J. at 77. Because a single criminal episode can be dissected into chronologically discrete offenses, different formulations of the rule have evolved over the years to advance its essential purpose. At different times and in varying factual settings, judicial attention has focused upon (1) the identity of the elements of the statute or crimes, see, e.g., Illinois v. Vitale, 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228, 235 (1980); Brown v. Ohio, 432 U.S. 161, 168-169, 97 S.Ct. 2221, 2226-2227, 53 L.Ed.2d 187, 195-196; Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932); State v. Goodman, 92 N.J. 43, 55 (1983); State v. Midgeley, 15 N.J. 574, 579-580 (1954); State v. Shoopman, 11 N.J. 333, 335 (1953); State v. Pa.R.R. Co., 9 N.J. 194, 197 (1952); State v. Labato, 7 N.J. 137, 144-145 (1951); State v. DiGiosia, 3 N.J. 413, 419 (1950); State v. Di Ventura, 187 N.J. Super. 165, 170-171 (App.Div. 1982) certif. den. 93 N.J. 261 (1983), (2) the legislative design in enacting overlapping laws incriminating the same unlawful conduct, see, e.g., State v. Best, supra 70 N.J. at 61; State v. Davis, supra 68 N.J. at 77-78; State v. Ruiz, 68 N.J. 54, 66 (1975) (Pashman, J., dissenting); State v. Cormier, 46 N.J. 494, 500-502 (1966); State v. Stenson, 174 N.J. Super. 402, 406 (Law Div. 1980) aff'd 188 N.J. Super. 361 (App.Div. 1982); State v. Bontempo, 170 N.J. Super. 220, 236 (Law Div. 1979), certif. den. 87 N.J. 317 (1981) and (3) whether multiple offenses emanate from a single criminal transaction or episode, Ashe v. Swenson, 397 U.S. 436, 450, 90 S.Ct. 1189, 1197, 25 L.Ed.2d 469, 479 (1970); State v. Roller, supra 29 N.J. at 345-346; State v. Hoag, 21 N.J. 496, 503 (1956), aff'd 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 *538 (1958); State v. Greely, 30 N.J. Super. 180, 184-185 (Cty.Ct. 1954), aff'd 31 N.J. 542 (App.Div. 1954). No single test "has achieved universal acceptance." State v. Warren, 186 N.J. Super. 35, 39 (Law Div. 1982). Rather, our courts have eschewed technisms and inflexibility in favor of the paramount considerations of "fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals." State v. Currie, 41 N.J. 531, 539 (1964).
With certain minor variations,[1] the Code of Criminal Justice has adopted the somewhat mechanistic standard established by the United States Supreme Court in Blockburger v. United States, supra, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309, under which the offenses are different if each requires proof of a fact not required by the other. See N.J.S.A. 2C:1-8 to -12. N.J.S.A. 2C:1-8a(1) proscribes multiple convictions for the "same conduct" where "one offense is included in the other...." N.J.S.A. 2C:1-8d(1) states in pertinent part that a lesser included offense is one which "is established by proof of the same or less than all the facts required to establish the commission of the offense charged."[2]
Applying that standard here, we are fully convinced that the aggravated sexual assault convictions do not merge. Clearly, the convictions are not for the "same conduct." Obviously, that term, "when seen in this context, refers to a single act which results in the commission of more than one offense." *539 State v. Di Ventura, supra 187 N.J. Super. at 172. See also II Final Report of the New Jersey Criminal Law Revision Commission at 210-211 (1971). Thus, we have defined the words "same conduct" as meaning "identical conduct." State v. Di Ventura, supra at 172. This definition is in accord with the decisions of other jurisdictions having similar statutory provisions. See State v. Esham, 321 A.2d 512, 514 (Del. Super. Ct. 1974); State v. Bellamy, 8 Ill. App.3d 606, 290 N.E.2d 645 (App.Ct. 1972).
Beyond this, the statutory bar against multiple convictions is not applicable here because the elements of the two aggravated sexual assault offenses are entirely different. Simply stated, we are not concerned with a lesser included offense. Each of the two crimes required proof of facts not required by the other. We, thus, conclude that N.J.S.A. 2C:1-8a(1) does not require merger of the convictions.
We recognize that the Blockburger standard codified in N.J.S.A. 2C:1-8a(1) has been characterized by our Supreme Court as "suffer[ing] from a certain sterility." State v. Truglia, supra 97 N.J. at 521. However, assuming that the more flexible and less mechanistic approaches adopted previously by our courts have survived enactment of the Code of Criminal Justice, see N.J.S.A. 2C:2-5, we nonetheless conclude that the doctrine of merger is not applicable. We perceive no legislative design to bar multiple convictions for separate sexual acts merely because they are separated by a brief time span.
Nor would the result be different were we to "focus on the episodic fragments of the events." State v. Truglia, supra at 521. The same transaction test "was designed to suggest that double jeopardy principles should preclude fractionalization where the charged misconduct" is part of a single overall criminal transaction. State v. Gregory, 66 N.J. 510, 515 (1975). In operation, however, the test "has not been fully acceptable since ... `transaction' is a shapeless term and its utility depends on the way it is defined and applied." Ibid.
*540 Here, we would be myopic were we to ignore the fact that the victim suffered separate and distinct indignities. Each assault can reasonably be considered a separate event deliberately undertaken and warranting separate prosecution and conviction. Defendant deliberately subjected the victim to repeated and different acts of sexual abuse. In short, we discern no reason to accord him the benefit of a "free" crime. State v. Yarbough, 100 N.J. 627 (1985).

III
Defendant's final argument pertaining to the trial judge's refusal to admit evidence of the results of the polygraph examination is clearly without merit and does not require extended discussion. R. 2:11-3(e)(2). There is nothing in this case which would permit us to depart from the principles adopted by our Supreme Court in State v. McDavitt, supra. See State v. Christopher, 149 N.J. Super. 269, 274-275 (App. Div. 1977) certif. den. 75 N.J. 24 (1977).
In sum, we conclude that defendant's arguments are wholly without merit. Accordingly, the judgment of convictions is affirmed in all respects.
NOTES
[1] Also, N.J.S.A. 2C:1-8a bars multiple convictions emanating out of the same conduct where (1) "[o]ne offense consists only of a conspiracy or other form of preparation to commit the other," (2) inconsistent findings of fact are required to establish the commission of the offenses, and (3) "[t]he offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a single instance of such conduct."
[2] N.J.S.A. 2C:1-8d also defines an included offense as (1) one consisting of an "attempt or conspiracy" to commit the offense charged, and (2) one differing from the offense charged "only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission."